**DAWSON et al. v. HICKMAN.**

No. 4954.

Court of Civil Appeals of Texas. Texarkana.

May 14, 1936.

Rehearing Denied June 4, 1936.

Jerome P. Kearby, of Bowie, Massingill & Belew, of Fort Worth, and Lasseter, Simpson & Spruiell, of Tyler, for plaintiffs in error.

Goggans & Keith and Lawrence F. Green, all of Dallas, and McDavid & McDavid, of Henderson, for defendant in error.

SELLERS, Justice.

L. Hickman as plaintiff brought this suit in trespass to try title against Ray Dawson and others holding under him to recover the 7/8 leasehold estate in .71-acre of land located in Rusk county, and a part of the W. W. Sims survey. The defendants by their answer pleaded not guilty, improvements in good faith, and by cross-action seek to recover title to the land. The case was tried without a jury and resulted in judgment for plaintiff for the leasehold estate in the land. Defendants recovered the value of their improvements. From this judgment, the defendants have prosecuted an appeal to this court by writ of error.

The land involved is a part of a tract of land acquired by A. J. Hindman and his wife and belonging to their community estate at their death. This tract contains 121¼ acres and is a part of the Sims and the Snow surveys. The west boundary of this tract is the center of Leverette's creek, which runs in a general north and south direction. A. J. Hindman's wife died in 1915, and he died

in 1916. They left as their only heirs their four children, to wit, B. F. Hindman, J. P. Hindman, W. A. Hindman, and Emma Hindman. These children agreed in 1916 upon a division of their father's and mother's estate. Under this agreement, B. F. Hindman, J. P. Hindman, and W. A. Hindman were to divide the above-mentioned 121¼-acre tract equally, W. A. Hindman to receive the south one-third, B. F. Hindman the center one-third, and J. P. Hindman the north one-third. Emma Hindman received her share of the estate from other land not mentioned herein. After this agreement, the Hindmans employed a surveyor by name of Choice to survey the land and prepare deeds to each in accordance with their agreement. The surveyor first surveyed the 121¼ acres, and the four corners of this tract, as well as the boundaries thereof as established by him, are correct and are not in dispute on this appeal. He then proceeded to run the lines in an effort to divide the 121¼-acre tract in accordance with the agreement. After he had completed his survey, he went to the home of the Hindmans and there prepared deeds to each of the three Hindman boys. W. A. Hindman's deed was to the south tract, and we quote from this deed as follows:

"State of Texas, } No. 7968
County of Rusk. }

"Know All Men By These Presents:

"That we, Miss Emma Hindman, B. F. Hindman, J. P. Hindman, heirs of A. J. Hindman, deceased, and for the purpose of an equal division of the estate of the county of Rusk state of Texas for and in consideration of the sum of Five Dollars and to partition the estate of A. J. Hindman deceased—Dollars to us in—W. A. Hindman; have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said W. A. Hindman of the county of Rusk, State of Texas all to that certain lot or parcel of land situated about 16 miles N. W. from the city of Henderson described as follows:

"Beginning at the N. E. corner of the Leverett Place witness gum & P Oak; Thence W 25 chains to corner with Leverett witness Oak & Pine; Thence S. 11 chains 55 links to corner; Thence W: 17 chains 71 links to center of branch witness small B. gum; Thence N. 16 chains 90 links witness gum N. 43½ E. 15 ft.; Thence E 43 chains 16 links to Overton and Kilgore road witness P. O. N. 80 E. 25 ft.; Thence S. 5 chains 35 links to

place of beginning, containing 43.83 acres. 14 acres of the Snow H. R. survey and 29.83 acres of the Sims H. R. Survey. * * *"

This deed was duly acknowledged by grantors. B. F. Hindman received deed to the middle tract, from which we quote as follows:

"The State of Texas, }
County of Rusk }

"Know All Men By These Presents:

"That we, Miss Emma Hindman, J. P. Hindman, deceased and W. A. Hindman heirs of A. J. Hindman, deceased and for the purpose of an equal division of the Estate of the County of Rusk, State of Texas, for and in consideration of the sum of Five Dollars, and to partition the estate of A. J. Hindman deceased, Dollars to us paid, and secured to be paid by B. F. Hindman, as follows: have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said B. F. Hindman of the County of Rusk, State of Texas, all that certain lot or parcel of land in Rusk County, Texas, about 16 miles N. W. from the City of Henderson described as follows:

"Beginning at N. E. corner of W. A. Hindman, Black witness P. O. N. 80 E 25 ft. thence W 43 chains 16 links to corner in Branch witness, gum N 43½ E 15 ft. thence N 9 chains 75 links with branch, witness willow. S 9 ft. thence E 43 chains to stake on Overton and Kilgore road, thence S 9 chains 75 links to place of beginning containing 43-83/100 acres 25 acres of the Snow H. R. Survey, 18-83/100 acres of the Sims H. R. Survey. * * *"

J. P. Hindman received a deed to the north tract, from which we quote:

"The State of Texas, }
County of Rusk }

"Know All Men By These Presents:

"That We Miss Emma Hindman, B. F. Hindman and W. A. Hindman heirs of A. J. Hindman, deceased, and for the purpose of dividing the estate equal of the County of Rusk, State of Texas, for and in consideration of the sum of Five Dollars and to partition the Estate of A. J. Hindman, deceased, DOLLARS to us in hand by J. P. Hindman, as follows: have GRANTED, SOLD AND CONVEYED, and by these presents do GRANT, SELL AND CONVEY, unto the said J. P. Hindman of the County of Rusk, State of Texas, all that certain lot or

parcel of land in Rusk County, Texas, about 16 miles N. W. from the City of Henderson described as follows: Beginning at stake at the N. E. corner of B. F. Hindman block on the Overton and Kilgore road thence W. 43 chains 85 links witness willow S 9 ft.; thence N. E. with branch 10 chains 33 links to corner of Andy Givens, thence E. 40 chains to corner with Brightwell Land. Thence S. 10 chains 33 links to place of beginning containing 43 83/100 acres 25 acres of the Snow H. R. Survey and 18 83/100 acres of the Sims H. R. Survey. * * *"

The .71-acre tract involved in this lawsuit lies between Leverette's creek and a due north line running from W. A. Hindman's southwest corner to B. F. Hindman's south boundary line. The following plat will aid in more readily understanding the location of the land and the description thereof:

The defendant in error claims the .71 acre under an oil and gas lease executed by W. A. Hindman, in which the land is described as it was in W. A. Hindman's deed. The plaintiffs in error claim under a subsequent oil and gas lease executed by J. P. Hindman, he having purchased the interest of the other Hindman heirs in this .71-acre tract. At the time the plaintiffs in error purchased their oil and gas lease, the lease under which defendant in error claims was of record. The contention of plaintiffs in error was that the .71 acre of land was not included in the deed to W. A. Hindman and had therefore never been divided between the Hindman heirs.

The controlling question presented by this appeal is to determine under the pleadings and evidence the proper location of the west boundary of the W. A. Hindman tract of land as described in the deed of partition to him.

 In determining the above question, we think the court properly admitted in evidence and took into consideration the surveys made for the B. F. Hindman tract and the J. P. Hindman tract, for they were all made at the same time and for the common purpose of dividing the 121¼-acre tract of land. Texas Co. v. Andrade (Tex.Civ.App.) 52 S.W.(2d) 1063. If these deeds do not by their terms clearly describe the .71 acre of land as a part of the W. A. Hindman land, or if they are phrased in language susceptible of more than one construction, the intention of the parties is to be ascertained, not solely from the words of the instrument, but from the language when read in the light of the circumstances surrounding the transaction. Gulf Production Co. v. Spear, 125 Tex. 530, 84 S.W.(2d) 452. Applying these rules to the facts of this case, we are of the opinion that the trial court was justified in finding the west boundary of the W. A. Hindman 43.83-acre tract was the center of Leverette's creek and not a line due north of the southwest corner of such tract as contended for by plaintiffs in error. There are a number of reasons why we think the court was justified in this conclusion. First, to hold the due north line as the west boundary would defeat the undisputed intention of the parties to divide the whole of the 121¼-acre tract. A due north line would cross Leverette's creek and take in land which admittedly never belonged to the estate of A.

J. Hindman, deceased. Further, a due north line would establish the northwest corner of the W. A. Hindman tract at a point east of the southwest corner of the B. F. Hindman tract while the calls for course and distance contained in the deeds of W. A. Hindman and B. F. Hindman as to the boundary between them would establish these corners at a common point. And, too, a due north call would take from the amount of land called for in the deed of W. A. Hindman about ½ an acre. The whole contention of plaintiffs in error, it seems to us, is brought about by the failure of the surveyor, Choice, who prepared the partition deed, to call for the west boundary line of the W. A. Hindman tract to run with the creek as he did in the other two deeds. This failure to call for the creek is so apparent from the face of the three deeds that we hardly see how a reasonably prudent man could be misled thereby.

 Plaintiffs in error contend that since the field notes of the surveyor, Choice, called for a due north line from the southwest corner of the W. A. Hindman tract to the west boundary of such tract that the trial court was not authorized to extend the west boundary to the center of the creek. This contention, in our opinion, cannot be sustained. We gather from the face of the partition deeds alone the clear intention on the part of the Hindman heirs to divide the whole of the 121¼-acre tract and to divide it equally among the three boys, for each deed purports to convey one-third of the whole tract. It is apparent to our minds from the partition deeds that the parties intended that the west boundary of each tract should be Leverette's creek. This is manifest from the fact that the division lines were run east and west, and the field notes of the center and north tract call for the creek as the west boundary. This being the intention of the parties as gathered from the partition deeds, it was the duty of the trial court to carry out such by establishing Leverette's creek as the west boundary of the W. A. Hindman tract and thereby taking in the land here sued for. In carrying out this intention, the law is well settled that the court had a right to disregard the due north call in the W. A. Hindman deed. Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.(2d) 1080, 1087, 85 A.L.R. 391. In that case the court was dealing with a partition of prop-

erty abutting on the railroad right of way, in which the rules applicable to partition of land abutting on a nonnavigable stream are applied, and in discussing the right of the court to disregard certain calls in the field notes, held:

"The law books are replete with instances where the courts have disregarded specific and particular calls in a deed, and so construed the same as to pass the title to land not included in the boundaries of such field notes when such construction was necessary to effectuate the clear intention of the grantor as manifested by language used in other portions of the deed. * * *

"The fact that it appears from the plat that the lines of the lots fronting on the railroad stop at the exterior line of such right of way is not of itself sufficient to exclude the conveyance of the title to the center of the railroad. It was expressly so determined in the case of Texas Bitulithic Co. v. Warwick, 293 S.W. 160, 162, in which the Commission of Appeals quoted with approval the doctrine announced in Corpus Juris (9 C.J. p. 201), as follows: 'The presumption of an intent to convey title to the center of a street or highway is not overcome by the fact that the land is described by metes and bounds, and that the distances stated in the description of the deed do not extend to the center of the street.'"

The general rule applicable to nonnavigable streams is found in 9 C.J. page 187, § 65, from which we quote:

"A grant or conveyance of land bounded by a non-navigable stream carries with it the bed of the stream to its center, unless a contrary intent is manifested from the grant or conveyance itself. In such case the stream is regarded as the boundary or monument, and the purchaser takes to the middle of the monument as part and parcel of the land."

This general rule has been held to apply in this state although the grant may call for marked corners upon the banks of the stream and for a line between such corners which do not correspond with the center of the stream. Dutton v. Vierling (Tex. Civ.App.) 152 S.W. 450. In the case under consideration, the deed calls for one of the corners to be in the center of Leverette's creek, while the other corner established by a due north call would be about 50 feet east of the stream, and no marked corner is established by the evidence at this point although such deed calls for a bearing tree. Such facts, in our opinion, are not as strong as they were in Dutton v. Vierling, supra, and should not be held as sufficient to take this case out of the general rule, and, as there is nothing else in the partition deeds to show an intent to except the .71 acre from the conveyance to W. A. Hindman, the trial court properly construed the W. A. Hindman deed as a conveyance of the land to the center of Leverette's creek.

In view of the foregoing conclusions, and since the defendant in error's lease was of record when the plaintiffs in error purchased, they cannot claim to be innocent purchasers as the recording of defendant in error's deed gave notice to subsequent purchasers of what is embodied in its terms by a fair construction. Miller v. Lemm (Tex.Com.App.) 276 S.W. 211.

Plaintiffs in error insist that their grantor is a necessary party to this suit. We overrule this construction. The suit is one in trespass to try title to the mineral leasehold estate only. No reformation or cancellation of the conveyance to plaintiffs in error is sought. In this situation, plaintiffs in error's grantor would not be a necessary party.

Plaintiffs in error have a number of assignments complaining of the inadmissibility of certain evidence. Irrespective of the inadmissibility of the evidence complained of, there was sufficient evidence admitted, not complained of, to justify the judgment of the trial court. Since the case was tried to the court without a jury, it will be presumed that the court rendered his judgment upon such evidence and disregarded that which might have been inadmissible.

There are other assignments which we have not discussed, but they have all been considered, and we find in the record no reversible error.

The judgment of the trial court is affirmed.