**TEXAS GENERAL INDEMNITY COMPANY, Appellant,**

v.

**Evelyn MANNHALTER, Appellee.**

No. 12950.

Court of Civil Appeals of Texas.

Galveston.

May 3, 1956.

Rehearing Denied May 24, 1956.

Wigley, McLeod, Mills & Shirley and V. W. McLeod and J. L. McMicken, Galveston, for appellant.

Godard & Dazey and William B. Dazey, Texas City, for appellee.

HAMBLEN, Chief Justice.

Appellant's statement of the nature and result of this suit, the correctness of which appellee concedes, is as follows:

This is an appeal from a judgment in a Workmen's Compensation case. Plaintiff filed her original petition on September 27, 1954, alleging that she injured her right foot, ankle and leg while working for her employer, Montgomery Ward & Company, Inc., in Texas City, Texas, and that as a result of such injury she sustained a 20% partial permanent disability to her right leg below the knee. Plaintiff's first amended original petition filed on April 4, 1955, changed the allegation of percentage of permanent partial disability to the right leg below the knee to 75%. Trial was to a jury and commenced on June 17, 1955. A verdict was rendered by the jury on the 20th of June, 1955, wherein the jury found that plaintiff suffered a 30% permanent partial disability to her right leg below the knee and that plaintiff's average weekly wage computed under Subdivision 3 of Section 1 of Article 8309 of the Texas Revised Civil Statutes as amended was $44. Judgment was entered on the 29th day of June, 1955, awarding plaintiff recovery for 30% permanent partial incapacity for the loss of the use of her right leg below the knee of $7.92 per week for 125 weeks.

In eleven formal points of error, appellant presents three basic contentions upon which it predicates its right to a reversal of the judgment rendered in the trial court. First it contends that there is no evidence, or alternatively insufficient evidence, to justify the submission of or to support the jury verdict in response to special issue No. 5 wherein the jury found that appellee suffered 30% partial permanent loss of the use of her right leg below the knee after April 21, 1954. Appellant next contends that there is no evidence, or alternatively insufficient evidence, to justify the submission of or to support the jury verdict in response to special issues Nos. 6 and 7 wherein the jury found that there was not another employee of the same class as appellee working substantially the whole of the year immediately preceding March 26, 1954, in the same or neighboring place and that the just and fair weekly wage for the appellee is $44. Finally, appellant complains of asserted improprieties committed by counsel for appellee in voir dire examination of the jury panel, the nature of which will be hereinafter set forth.

Appellee was employed as an inventory clerk by Montgomery Ward. Her employment began December 1, 1953, at which time she was 36 years of age. On March 26, 1954, she fell while walking, injuring her right ankle, her knee and her elbow. It was stipulated that as a result of such accident appellee suffered a 75% disability of the right leg below the knee for the period of March 26, 1954, to April 21, 1954, for which she was paid compensation in the amount of $67.87, and that she returned to work on April 21, 1954. There is evidence in the record that after returning to work appellee performed her duties satisfactorily and without complaint for a period of three to four weeks when she was discharged because of a reduction in force. Appellee was unemployed until October 1, 1954, at which time she was employed as a sales clerk by J. C. Penney Company.

The principal basis for appellant's first contention presented in points of error Nos. 1, 2, 3 and 8 is the fact that three medical doctors who examined and treated appellee, and who were all of the medical doctors who did examine and treat appellee, estimated her disability at from 3% to 10%. We do not construe its complaint to be directed to the proposition that there is no evidence of permanent partial disability. The only medical witness who testified was called for appellant and expressed a medical opinion that appellee suffered a 6% disability in her right leg below the knee which was probably permanent. In view of the issues joined by the pleadings of the liti-

gants, the submission of special issue No. 5 was required. Appellant's complaint is that there is no sufficient evidence to support a finding of a percentage of disability greater than 10% and that the jury's finding of 30% is contrary to the overwhelming weight and preponderance of the evidence, and that the judgment rendered on such finding is excessive. We overrule their points so directed.

Both litigants concede that a jury may make its own estimate of the percentage of disability resulting from impairment of use of a portion of the body without any witness specifying the percentage. Traders & General Ins. C. v. Snow, Tex.Civ.App., 114 S.W.2d 682. Appellant contends, however, that where, as here, three qualified witnesses testified to not more than 10% disability, the jury is limited in its finding to the maximum testified to. We are unable to agree with this contention.

Appellant's medical witness testfied that he reached his stated conclusion of a 6% disability by using a formula premised upon the assumption that a complete loss of motion of the ankle joint would constitute a 30% disability in the leg below the knee. He estimated appellee's loss of motion of the joint at 20% and, therefore, her disability at 6%. He testified that this method of estimating disability was in common use by doctors for estimating disability in industrial cases and was probably the method used by the other doctors who examined and treated appellee. He further testified that this method of estimating disability made no allowance for the activity which might be required of the impaired member and that the same disability estimate would be reached under the formula in the case of a toe dancer as in the case of a sedentary person. With the witness's testimony thus explained, we are unable to see that it can be held to have the limiting effect, as a matter of law, which appellant contends.

■ After examining the entire record, as we are required to do when the fact reviewing jurisdiction of this Court is invoked, we conclude that there is sufficient evidence to support the jury finding of 30% disability and we cannot see that such finding is contrary to the overwhelming weight and preponderance of the evidence. Appellee testified that her ankle had gotten no better; that since she returned to work it had gotten worse and had become more painful; that it was swollen each evening; that the longer she stands the "worse it hurts" and sometimes is almost unbearable; that it is never completely "at ease"; that she supports her weight when standing primarily on the uninjured leg and has difficulty in climbing stairs. Appellee's brother testified that appellee favored her injured leg, appearing to have quite a bit of pain in it, particularly in the evening, and was quite cautious in ascending and descending stairs. Appellee's mother testified that appellee limps at all times; that her left side is larger than the right in the hip region and that one calf is larger than the other by one inch. Testimony to the same effect was given by the witness, Mrs. L. W. Holder. The jury had before it evidence of the character of the work performed by appellee and the extent of the demands which that work would make upon her injured leg. In view of the circumscription of the medical testimony, we cannot say that the finding of 30% disability was contrary to the overwhelming weight and preponderance of the evidence, nor that the judgment rendered thereon is excessive.

■ Appellant also urges in support of its first contention the fact that the evidence shows that appellee suffered no economic loss and thus has suffered no incapacity, as held in Lumbermen's Reciprocal Ass'n v. Coody, Tex.Civ.App., 278 S.W. 856, and in Employers' Reinsurance Corp. v. Wagner, Tex.Civ.App., 250 S.W.2d 420. The Wagner case has been construed by this Court contrary to appellant's contention, in its decision in American General Ins. Co. v. Bailey, Tex.Civ.App., 287 S.W.2d 290. Also, being a general injury case, the philosophy of the Wagner case is not here applicable. The statement from the opinion in the Coody case relied upon by appellant appears to have been overruled by the holding by the same court in the case of Dohman v. Texas Employers' Ins. Ass'n, Tex.

Civ.App., 285 S.W. 848. It appears to be established law in Texas today that proof of economic loss, or the absence thereof, following an injury is but a circumstance to be considered in determining the question of incapacity.

■ In response to special issue No. 7, the jury found that $44.00 would be a just and fair amount to be fixed as the average weekly wage of appellee. The issue was submitted under the provisions of paragraph 3 in the definition of "average weekly wage" contained in the Workmen's Compensation Law, Article 8309, § 1, V.A.T.S. The issue as submitted was conditioned upon an affirmative finding by the jury in response to special issue No. 6. In response to that issue, the jury affirmatively found that there was not another employee of the same class as appellee working substantially the whole of the year immediately preceding March 26, 1954, in the same or similar employment in the same or neighboring place.

On this appeal appellant contends that there is no evidence, or alternatively insufficient evidence, to support the jury's answer to special issue No. 6 and that, therefore, the submission of special issue No. 7 was erroneous. This contention is presented in its points of error Nos. 4, 5, 6, 7 and 11. We overrule such points.

Both litigants concede that paragraph 1 under the definition of "average weekly wage" has no application in this case. Both litigants likewise concede that before the formula provided for in paragraph 3 can be employed, the claimant must negative the applicability of the formula provided for in paragraph 2 under the definition. The probative effect of the evidence in this connection is the issue here to be determined.

The proof shows that in Texas City Montgomery Ward & Company conducts a mail order business exclusively. At the time of her injury, appellee was employed as an "inventory clerk." Appellee offered the testimony of the witness, Mrs. A. L. Bucklew, who from January 26 to December 21, 1953, had been employed as "inventory clerk" by Montgomery Ward & Company in Texas City. She had resided in Texas City of eighteen years. She testified in part as follows:

"Q. Do you know whether or not there is any other store in Texas City or its neighborhood that is engaged in a mail-order business? A. Yes, sir.

"Q. What is the name of that store?' A. Sears, Roebuck & Co.

"Q. Do you know whether or not they have an inventory clerk at that store? A. They do not.

"Q. Do you know whether or not there is anyone who has worked substantially the whole of the year beginning March 26, 1953 and ending March 26, 1954, as an inventory clerk in Texas City or vicinity? A. No, sir.

"Q. Court: What was your answer? A. No, sir.

"Mr. Dazey: Do you know all of the persons who performed the duties of an inventory clerk for Montgomery Ward during the period from March 26 to December 21? A. 1953?

"Q. Yes. A. Offhand I can't remember any of them.

"Q. But you do know? A. Yes.
"Mr. McLeod: Don't lead her, please.
"Mr. Dazey: State whether or not any of those people worked for substantially the whole of the year beginning March 26, 1953, and ending March 26, 1954. A. No, sir.

"Q. None of them? A. No, sir.

"Q. Are there any other stores in Texas City or its vicinity which conduct a mail-order business comparable to that which Sears Roebuck and Montgomery Ward conduct? A. No, sir, I don't think so.

"Q. You say you don't think so? A. Well, I believe Montgomery and Sears are the only mail-order businesses in Texas City."

The witness, Mrs. Evelyn Taylor, had been an employee of Montgomery Ward & Company in Texas City for fourteen years and held the position of office manager at the time of appellee's injury. The follow-

ing portion of her testimony bears upon the issue here presented:

"Q. Do you know what the rate in Texas City was for employees doing the same kind of work as Evelyn Mannhalter was doing, what they earned per hour? A. No. There was only one other store, and that was Sears, and I don't know what they paid."

The testimony of the witnesses above quoted is evidence of the fact that Montgomery Ward & Company and Sears, Roebuck & Co. were the only mail order businesses conducted in Texas City or its neighborhood; that Sears, Roebuck & Co. does not employ an "inventory clerk" and that no person was employed as "inventory clerk" by Montgomery Ward & Company for substantially the whole of the year preceding appellee's injury. This evidence is sufficient, in our opinion, to support the jury verdict in response to special issue No. 6. Its probative effect is clearly distinguishable from that of the evidence discussed in the case of Texas Emp. Ins. Ass'n v. Ford, 153 Tex. 470, 271 S.W.2d 397, upon which appellant primarily relies. As the Supreme Court points out, the substance of the testimony in that case was that the witness did not know whether any fact existed which would enable the court to determine the claimant's average weekly wage under Subsection 2 of Section 1, Article 8309, V.A.T.S. In the present case, the evidence negatives the existence of such facts, if not expressly, certainly by permissible inference.

■ Appellant's Points Nos. 9 and 10 are directed to the asserted error of the trial court in failing to declare a mistrial, or alternatively, to dismiss the jury panel, both of which actions were urged alternatively by appellant before the jury was selected. The basis for appellant's motions is reflected in the following statement taken from its brief:

"During the course of the voir dire examination of the jury panel Plaintiff's attorney, William B. Dazey, asked the jury panel whether any of the jurors would be prejudiced if the Plaintiff did not call doctors to testify as to the nature of her injury and the extent of her disability, if it appeared that those doctors had examined the Plaintiff at Plaintiff's request. All of the jurors, except Juror Loomis, indicated by their silence that they would not be so prejudiced. Juror Loomis held up his hand and said that he thought that a doctor should testify. The Defendant had objected to this question being asked by the Plaintiff but the Court overruled such objection. Thereafter Defendant moved the Court prior to strikes being made and before the petit jury was actually selected to declare a mistrial, or in the alternative, to dismiss the jury, or in the further alternative challenged the jury for cause on the grounds that the jury, except Juror Loomis, would be prejudiced against the Defendant, that the jury had committed itself in advance that it would not consider Plaintiff's failure to produce a doctor or her own doctors as witnesses. The Trial Court overruled Defendant's Motion, to which action the Defendant excepted."

The decision of the question presented is not without its difficulties. The difficulties are aggravated by the paucity of the record, which consists only of a bill of exception taken by appellant before the jury was selected. Because of the silence of the record upon the matter, we are unable to consider, for instance, appellee's argument that the error, if any, was invited. Also, aside from appellant's statement in its brief to the effect that objection was made to the question by appellee at the time it was asked, and the fact that such statement is not challenged by appellee, the record sheds no light upon the grounds of such objection.

Of the three medical doctors who examined and treated appellee, two did so at her request, and one at the request of appellant. Only the latter doctor testified. Written reports made by appellee's doctors were admitted in evidence by agreement. It thus appears that appellee's failure to call her doctors to testify could properly be

considered by the jury, and was a proper subject of comment by appellant. Gulf, C. & S. F. R. Co. v. Dooley, 62 Tex.Civ.App. 345, 131 S.W. 831; Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302; American Employers' Ins. Co. v. Kellum, Tex.Civ.App., 185 S.W.2d 113.

It has been held to be error to allow counsel on voir dire examination of the jury panel to ask questions of the prospective jurors which would commit them in advance of the evidence, as to the weight they would give to any certain evidence. Parker v. Schrimsher, Tex.Civ.App., 172 S.W. 165; 50 C.J.S., Juries, § 275, page 1042. The question to be decided is whether the matter complained of in appellant's Points Nos. 9 and 10 is such, under the record here presented, as to require a reversal of the judgment rendered under the cited authorities. While not free from doubt, we conclude that it is not for the following reasons.

The proceedings relative to appellant's bill of exception contain the following statement by the trial court:

"Court: Let the record show that after the plaintiff's attorney had asked the jury, in effect, whether or not they would be prejudiced by the fact that no doctor or, at least, these particular doctors were not called by the plaintiff, the defendant's attorney said to the jury, in effect, that they had the right to consider that the doctors were not present, and while so stating, in effect, the plaintiff's attorney objected to statements being made by defendant's counsel, * * *."

The trial court, after overruling appellant's motions to declare a mistrial, or alternatively, to dismiss the jury panel, instructed the entire panel as follows:

"Court: Gentlemen of the Jury Panel, in view of the fact that the question has arisen as to whether or not any of you, if selected as jurors, would be prejudiced by the fact that the plaintiff may not call as witnesses any or all of the doctors who have heretofore treated her or examined her for her alleged injury, the Court thinks it proper to instruct you that, first, the Court does not know any more than you do what witnesses may be called by any of the parties to this lawsuit, and does not know whether any or all of these doctors will or will not be called, and, therefore, can only instruct you at this time that you who are selected as jurors will be the sole and exclusive judges of the credibility of the witnesses and the weight to be given to their testimony and that in determining that question you have the right to give such consideration as you may see fit to such medical testimony as may be produced before you or by the lack of medical testimony being produced before you. By this the Court means that it will be up to you to determine whether you should or should not believe the testimony of the plaintiff and any of the witnesses produced by her as to the extent of her injuries and that it is for you to determine what consideration, if any, you should give to the fact that such testimony may not be corroborated by medical testimony."

This Court has concluded that the quoted instruction given by the trial court effectively cured any error which might have been committed during the voir dire examination of the jury panel.

█ In addition to that conclusion, we have already stated our conclusions relative to the sufficiency of the evidence to support the verdict upon which the judgment rests. We therefore further conclude that if we are mistaken as to the curative effect of the trial court's instruction to the jury panel, nevertheless the judgment should not be reversed because we cannot say, as required by Rule 434, Texas Rules of Civil Procedure, that the error was such as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.

It is therefore ordered that the judgment of the trial court be affirmed, Associate Justice Cody not sitting.

CODY, J., not sitting.